Howard and Wife *v.* Denver & R. G. Ry. Co.[1]

*(Circuit Court, D. Colorado.* March 23, 1886.)

Master and Servant—Negligence—Fellow-Servants—Engineer in Charge of Engine and Fireman on Another Train.

A fireman on a passenger train, and an engineer in charge of an engine not connected with such train, but belonging to the same railroad company, are fellow-servants, and where the fireman is killed by a collision between the engine and the train caused by the negligence of the engineer the company will not be liable.[2]

Action against a railroad company to recover damages for the death of an employe caused by negligence. Plaintiffs obtained a verdict, and defendant moves for a new trial. The material facts are stated in the opinion.

*Rogers & Cuthbert,* for plaintiffs.

*E. O. Wolcott,* for defendant.

Brewer, J. This is a motion for a new trial which, by the direction of the trial judge, has been referred to me for decision. As I was not present at the trial, I feel at liberty to consider only the principal question upon which the ruling of the trial judge was made.

---

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

[2] Respecting the liability of the master for an injury caused by the negligence of a fellow-servant, and herein of who are fellow-servants, see Garrahy v. Kansas City, St. J. & C. B. R. Co., 25 Fed. Rep. 258.

The facts which present that question are these: The plaintiffs are the parents of one John H. Howard, who, on May 19, 1883, was killed in a collision on defendant's road. Young Howard was employed as a fireman, working on the regular passenger train running west on that day from Pueblo to Leadville. That train was running on schedule time, and about a quarter of a mile west of Badger Station collided with a light engine running eastward, under the management and control of one, William Ryan, its engineer. Ryan neglected his instructions, and his negligence was the proximate cause of the collision. There was no proof of incompetence on his part, or of negligence in employing him, or in the order under which he was acting and which he disobeyed. The case rested simply on the fact of his negligence. The trial judge held that his negligence was the negligence of the company, and that he was not a fellow-servant with the deceased. This, then, is the single question presented. The rules of the company provided that an engineer running a light engine like this, without any separate conductor, should be regarded as both engineer and conductor. The question, therefore, is distinctly presented whether, in case of collision between a train and an engine, the negligence in the management of the engine, whereby injury results to the employes on the other train, is to be regarded as the negligence of the company, or simply the negligence of a fellow-servant. Obviously, the question is of no slight importance.

It will not be doubted that the early current of judicial decision in this country was such as to affirm that employes, situated as Ryan and the deceased, were fellow-servants. The great and leading case was that of *Farwell* v. *Boston & W. R. Co.*, 4 Metc. 49, in which the opinion was written by Chief Justice Shaw. He there stated the rule to be that all persons employed by the same master, and engaged in a common enterprise, were fellow-servants, no matter what the relation in which they stood to each other. This case was generally followed, both in this country and England, and the principles enunciated thereon were accepted as correct. Nor, on the other hand, can it be questioned that the later current, both of judicial decision and legislative action, is away from that ruling in many respects.

By action of the legislature in at least two states—Kansas and Iowa—the railroad company is made responsible to every employe for the negligence of every other employe, so that in these states the doctrine of fellow-servants in respect to the question of negligence has ceased to have any recognition. Outside of these states, by the rulings of many courts, the case of *Farwell* v. *Railroad Co.* has been much limited and restricted. One marked limitation is this: Wherever the master owes an absolute duty to the employes, and instead of discharging that duty himself intrusts it to an agent or servant, such agent or servant is not a fellow-servant within the meaning of the rule of liability for negligence. Thus, the master owes to every employe the duty of providing a reasonably safe place in which to

work, and reasonably safe instruments and machinery with which to work. This may be called a direct and absolute obligation. If the discharge of this obligation is intrusted to an agent or servant, such agent or servant is the representative of the master, and any negligence on his part is the negligence of the master.

Thus, in the case of *Calor* v. *Charlotte, C. & A. R. Co.*, decided by the supreme court of South Carolina at the April term, 1885, the plaintiff, a locomotive engineer, while running his engine between Columbia and Charlotte, was injured through the negligence of a section-master and supervisor of the track-laying force, who, in disregard of the appropriate signals, took up a portion of the track, and thus derailed the engine. The court held that the true test was whether this section-master was employed to discharge the duties of the master, and also that it was the duty of the master to provide a suitable and safe place for his employes to work in and on, which duty had, in this case, been committed to the section-master. His negligence was therefore properly adjudged the negligence of the master.

The same principle was recognized in the case of *Morris* v. *Richmond & A. R. Co.*, decided by the court of appeals of Virginia, in April, 1884, and reported in 8 Virginia Law J. 540. In that case, the decedent, whose administrator was plaintiff, was a brakeman on a material-train. A section gang at work on the track failed to signal the train, although it had the rails misplaced. In consequence, the train was derailed, and the decedent injured so that he died in eight hours. The court held that the section-men and the decedent were not fellow-servants, saying that "where a company delegates to an agent or employe the performance of duties which the law makes it incumbent on the company to perform, his acts are the acts of the company,—his negligence is the negligence of the company;" citing *Brothers* v. *Carter*, 52 Mo. 372; *Flike* v. *Boston & A. R. Co.*, 53 N. Y. 549; *Corcoran* v. *Holbrook*, 59 N. Y. 517; *Mullan* v. *Philadelphia & S. M. S. Co.*, 78 Pa. St. 25; *Ryan* v. *Chicago & N. W. R. Co.*, 60 Ill. 171.

The case of *Davis* v. *Central Vt. R. Co.*, 55 Vt. 84, is a well-considered case upon this point. In that case it appeared that, through the negligence of the company's bridge builder in constructing, and of the road-master in repairing, a culvert, it washed out, whereby a foreman was killed. The company was held responsible. The court said:

"The bridge-builder and road-master, while inspecting and caring for the defectively constructed culvert, were performing a duty, which, as between the intestate and defendant, it was the duty of the defendant to perform. Their negligence therein was the negligence of the defendant."

Among other cases affirming the same doctrine may be cited the following: *Lewis* v. *St. Louis & I. M. R. Co.*, 59 Mo. 495; *O'Donnell* v. *Railroad Co.*, 59 Pa. St. 239; *Nashville & C R. Co.* v. *Carroll*,

6 Heisk. 348; *Tierney* v. *Minneapolis & St. L. Ry. Co.*, 33 Minn. 311; S. C. 23 N. W. Rep. 229; *Atchison, etc., R. Co.* v. *Holt*, 29 Kan. 149; *Fuller* v. *Jewett*, 80 N. Y. 46; *Slater* v. *Jewett*, 85 N. Y. 61; *Gunter* v. *Graniteville Manuf'g Co.*, 18 S. C. 262; *Gilmore* v. *Northern Pac. R. Co.*, 15 Amer. & Eng. R. Cas. 304, and note.

Another important limitation is that where an employe is placed in charge of the entire operations, or of a separate department, so that in respect to the entire work, or the separate department, he has full control, is, so to speak, a vice principal—an *alter ego*—of the master, his negligence is that of the master, and not that of a fellow-servant. Thus the general superintendent of a railroad, the superintendent of bridges, the road-master, the foreman in charge of the machine-shops, have all been declared vice-principals, and their acts the acts of the master. And in a late case, which has attracted great attention, that of the *Chicago, M. & St. P. Ry. Co.* v. *Ross*, 112 U. S. 377, S. C. 5 Sup. Ct. Rep. 184, it was held that the conductor of a train came within the same category. The reason underlying this is that by reason of the extent of the authority conferred, the power and discretion vested in such employe, the fact that practical supremacy and control is given to him, it is fitting that he should be regarded as the active, present representative of the master,—one in whom the master has placed such confidence, and to whom he has so far transferred his powers, as to make him his other self. Among many authorities affirming this doctrine may be cited the following: *Railroad Co.* v. *Fort*, 17 Wall. 553; *Grizzle* v. *Frost*, 3 Fost. &. F. 622; *Cook* v. *Hannibal, etc., R. Co.*, 63 Mo. 397; *Whalen* v. *Centenary Church*, 62 Mo. 326; *Chicago, etc., R. Co.* v. *Bayfield*, 37 Mich. 205; *Lalor* v. *Chicago, etc., R. Co.*, 52 Ill. 401; *Mullan* v. *Philadelphia, etc., S. Co.*, 78 Pa. St. 25; *Kansas Pac. R. Co.* v. *Little*, 19 Kan. 267; *Malone* v. *Hathaway*, 64 N. Y. 5; *Brickner* v. *New York Cent. R. Co.*, 49 N. Y. 672.

An effort has been made to engraft another exception, to the effect that where the master sees fit to place one of his employes under the direction and control of another, the relation of fellow-servants does not exist, and the latter, in all his actions towards the former, is the representative of the master, and his negligence the negligence of the master. As in all the subdivisions of service,—no matter how minute,—in all separate work,—no matter how small the work,—there is generally a foreman or boss in charge, having control and direction, though often working with the others, the recognition of such an exception, as thus broadly stated, would largely increase the responsibility of the master. Nevertheless, the rule has been thus laid down by several courts. The supreme court of Kentucky, in *Louisville & N. R. Co.* v. *Bowler*, 11 Alb. Law J. 119, in which case a section-hand had been injured through the negligence of his section boss, decided "that the only sound rule is to hold the common superior, which can only act through its agents, responsible for injuries

resulting to the subordinate from the negligence of his immediate superior or party having control over him." Similar was the ruling of my predecessor, Judge McCRARY, in several cases, among them that of *Railway Co.* v. *Ross*, affirmed by the supreme court. 112 U. S. 377; S. C. 5 Sup. Ct. Rep. 184. Such also was the decision of the supreme court of Ohio in *Railway Co.* v. *Keary*, 3 Ohio St. 201, in which case the court said: "No service is common that does not admit a common participation, and no servants are fellow-servants when one is placed in control over the other."

Notwithstanding these decisions, the great weight of authority is against the proposition, and the rule of exception in respect to subordination limited to the case of departmental control as stated in my second proposition. Such, I think, is the clear import of the opinion in *Railway Co.* v. *Ross*, *supra*, which, considered in relation to the course of the trial and the instructions of the trial judge, seems to me impliedly to reject the doctrine that mere subordination destroys the relation of fellow-servants, and to insist upon departmental control as the test. In that case the trial judge charged explicitly as follows:

"It is very clear, I think, that if the company sees fit to place one of its employes under the control and direction of another, that then the two are not fellow-servants, engaged in the common employment, within the meaning of the rule of law of which I am speaking."

This was the instruction excepted to. The case was one in which an engineer had been injured through the negligence of the conductor in charge of his train. Now, if the reviewing court had been of opinion that the rule as stated by the trial judge was correct, naturally the opinion would have been an argument in support of it. On the contrary, nowhere in the opinion, which is elaborate and extensive, is there a single word in support or defense. The entire opinion goes to the effect that the conductor of a train, by virtue of his large powers and exclusive control, is properly one "clothed with the control and management of a distinct department," and therefore to be regarded as a vice-principal,—a representative of the company. It is expressly stated that the language of the instruction is open to criticism, but is not erroneous as applied to the facts in the case. In other words, that where departmental control exists the relation of fellow-servants does not. Further, in every case which is cited approvingly, and which bears directly on the question, the rule of departmental control was in terms recognized; or, as in the Ohio cases, in which the conductor of the train was the negligent party, the facts supported the conclusion of the supreme court. When we remember that this case was decided by a closely divided court, after evidently much deliberation, it seems an unavoidable conclusion that that court does not approve the rule laid down by the trial court.

Another exception which has received considerable recognition is, that where two employes, though serving the same master, are en-

gaged in a different class of work they are not to be regarded as fellow-servants, within the rule. Thus, in Illinois, it has been held that a book-keeper in a railway office was not a fellow-servant with an engineer, (*Chicago, etc., R. Co.* v. *Keefe,* 47 Ill. 110;) and also that a laborer in the carpenter shop was not a fellow-servant with the engineer, (*Ryan* v. *Railway Co.,* 60 Ill. 177.) A late case was decided by Mr. Justice MILLER of this circuit (*Garrahy* v. *Railroad Co.,* reported in 25 Fed. Rep. 258) in which it was ruled "that a common hand, engaged in the business of distributing iron rails along the side of the track to be laid in place of other rails removed from the track, and under the control, with six or eight other men, of a boss or foreman, is not in the same employment as a man controlling or managing a switch engine not used in carrying these rails, but in moving and transferring from one place to another cars not engaged in the business of relaying said track."

These are the only exceptions which it seems to me can in any manner be invoked to sustain the ruling of the learned trial judge; and I am constrained to believe that neither of them is sufficient.

So far as the place and machinery are concerned, both were safe. There is no pretense that the track was not in good order, or that the engines or other instruments for the movement and control of the train were not sufficient. This statement is made in respect to the matter ruled upon by the trial judge, and which alone I feel at liberty to consider. It will not do to say that, because Ryan's engine was in the way, and collided with decedent's train, the track was not clear, and therefore the master had failed in his duty of providing a safe place for the employe to work in and upon. The negligent use by one employe of perfectly safe machinery will seldom be adjudged a breach of the master's duty of providing a safe place for other employes. Such a construction would make any negligent misplacement of a switch, any negligent collision of trains, even any negligent dropping of tools about a factory, a breach of the duty of providing a safe place. The true idea is that the place and the instruments must in themselves be safe, for this is what the master's duty fairly compels, and not that the master must see that no negligent handling by an employe of the machinery shall create danger. Neither can it be said that Ryan and decedent were engaged in a different class of work. Both were employed in the movement of trains,—the same kind of service. True, they were on different trains, and at the time of the accident had no opportunity of noticing the conduct of each other until too late to prevent the collision. But, being engaged in the same kind of service and on the same division, they must naturally have often been thrown into contact and had ample opportunities for mutual supervision. To subdivide beyond the class of service, into the place of work, would carry the exception beyond well-recognized limits. It would make the train-men on one train not fellow-servants with those on another; the carpenters and machinists in one room

strangers in service to those of another; one gang of section-men not co-employes with another,—and all because, at the time, their places of work happened to be different. In the *Garrahy Case, supra,* Mr. Justice MILLER carefully notes the complete separation in the class of service of the two employes, while in the *Randall Case,* to be considered hereafter, the supreme court treated the fact that the employes were working on different trains as entirely immaterial. He who engages in train service knows that other trains besides his will be running, and may fairly be considered as contracting to take the risk of the negligence of the employes managing such trains. He must expect to be employed now on one train and now on another, to be thus thrown into contact with the other employes in that service, to know himself what is proper care in such work, and to be able to detect any evidence of carelessness on the part of those in like service. Every consideration which exempts the master from liability for the negligence of a co-employe seems to bind those in the same class of service together as fellow-servants.

Neither can this be considered a case of the negligence of one in charge of a department. While, by the rule of the company, the engineer in charge of a light engine is to be regarded as the conductor, yet this rule obviously contemplates the matter of reports, etc.,—the mere duties owing to the company for the purpose of giving and preserving complete information of the engine's movements,—and should not be construed, even if it were possible for a simple rule so to do, as lifting one with so little power, and but a single subordinate, into the dignity of a departmental director. We should always look to the substance of things, and not dignify with undue importance that which is properly but a mere regulation of details, or a mere means of information. It is true that an engineer in charge of a moving engine is placed in a position in which his negligence may cause serious disaster. So is every one in control of a power so tremendous as steam, whether in a moving or stationary engine. But the possibilities of disaster from his negligence do not make him any the more a representative of the master. They simply cast upon the master the duty of greater care in his selection. To make one as the controller of a department properly the representative of the master, his duties should be principally those of direction and control. He should have something more than the mere management of machinery; he should have subordinates over whose various actions he has supervision and control, and not a mere assistant to him in *his* working of machinery. He should have control over an entire department of service, and not simply of a single machine in that service. He should be so lifted up, in the grade and extent of his duties, as to be fairly regarded as the *alter ego*—the other self—of the master. I think I only voice the general judgment of the profession in saying that the decision in the *Ross Case* was a surprise, and that it carried the doctrine of departmental control to the extreme. To extend it to the

case of an engineer running a light engine, with no train,—no subordinate save the fireman,—would, it seems to me, be judicial legislation.

I have thus far considered this case upon general principles. I now turn to a case in the supreme court, recently decided, that of *Randall* v. *Baltimore & O. R. Co.*, 109 U. S. 478, S. C. 3 Sup. Ct. Rep. 322, which seems to me so closely in point as to compel the decision here. In that case a brakeman unlocking a switch, to enable his train to pass from one track to another, was injured by the tender of a freight-engine in no way connected with his train. Negligence was charged upon the engineer managing this engine. The supreme court unanimously held the brakeman of the one train and the engineer of the separate engine fellow-servants. In the opinion we find this language:

"Persons standing in such a relation to one another as did this plaintiff and the engineer of the other train are fellow-servants, according to the very great preponderance of judicial authority in this country, as well as the uniform course of decision in the House of Lords, and in the English and Irish courts, as is already shown by the cases cited in the margin. They are employed and paid by the same master. The duties of the two bring them to work at the same place at the same time, so that the negligence of the one in doing his work may injure the other in doing his work. Their separate services have an immediate common object, the moving of the trains. Neither works under the orders or control of the other. Each, by entering into his contract of service, takes the risk of the negligence of the other in performing his service; and neither can maintain an action for an injury caused by such negligence against the corporation, their common master."

Every test which the learned judge lays down for determining the question of fellow-servants applies fully and exactly to the case at bar: Common employer and pay-master; same place of work, exposing one to injury from negligence of the other; same class of service; neither subject to other's control. Unless we regard Ryan as a departmental director, which, for reasons heretofore indicated, I think cannot be done, the cases are substantially parallel. Of course, if so, that decision controls the case.

I am aware that the *Ross Case* is a later expression of that court, and it is claimed overrules it. The opinion in that case contains no reference to this, does not purport to overrule it, and, with the construction I have placed upon it above, is in entire harmony with it.

One other case has been cited, that of *Feitzman* v. *P. F. & C. R. Co.*,[1] recently tried in the United States circuit court for the Northern district of Illinois. In that case, through the negligence of a switch conductor, an engineer of a switch-engine, subject to the control of another switch conductor, was injured, and the learned circuit judge in his charge to the jury ruled that the parties were not fellow-servants, and that the company was liable for the switch conductor's negligence. Unless the switch conductor can be considered as the su-

[1] Oral charge to jury; not reported.

perintendent of a department, and thus within the scope of the Ross decision, (and that doubtless was the view taken by the learned judge,) it would seem that the ruling was directly in conflict with the *Randall Case.*

I do not know that I need add more, or that I can make my views any clearer. I have given this case a most careful examination. I am fully aware of the direction of modern rulings. The views expressed and the principles enunciated in the *Farwell Case* may not be obviously and unquestionably correct. It is not improbable that ere long the rule of exemption laid down in that case may be entirely overthrown. But if overthrown it should be by legislative action, and not by judicial decision. The true path for judicial walk is, as I conceive, *super antiquas vias.*

I think the motion for a new trial should be sustained.