FELTON v. HARBESON.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1900.)

No. 723.

1. MASTER AND SERVANT—FELLOW SERVANTS—TRAIN DISPATCHER AND TRAIN-
MEN.

A railroad train dispatcher is a vice principal, and not a fellow servant,
in his relation to trainmen, and the master is liable for an injury to a
trainman which is the proximate result of the negligence of the dispatcher
in giving orders for the movement of trains.[1]

2. SAME—INJURY OF SERVANT—CONCURRING CAUSES.

A master is liable for an injury to a servant of which the negligence of
a vice principal was a proximate contributing cause, although the negli-
gence of a fellow servant was also contributory.

3. SAME—QUESTIONS FOR JURY.

A train dispatcher sent an order for the passing of two trains on a
single-track railroad at a certain station, to be delivered to one of the
trains at such station, in direct violation of a rule of the company which
required such orders to be delivered to all trains at least one station from
the point of meeting. A second rule required all trains, on approaching
signal stations, to be under such control that they could be stopped before
passing the signal board, if proper signal therefor was given. The regular
train, which had not received the orders for meeting, could not be stopped
by the engineer, after receiving the signal, until it had passed beyond the
switch through which the opposing train was to enter, and a collision
resulted, in which plaintiff's intestate, a fireman, was killed. Held, that
the first rule must be regarded as prescribing an additional precaution
deemed necessary by the company to insure greater vigilance and care on
the part of engineers in approaching meeting stations, and that its viola-
tion by the train dispatcher could not be said, as matter of law, not to
have been a proximate cause of the injury, even conceding that the colli-
sion would not have occurred but for the concurrent negligence of the
engineer in failing to have his train under proper control, since such neg-
ligence may have been superinduced by his ignorance that he was to meet
the other train.

In Error to the Circuit Court of the United States for the District
of Kentucky.

C. B. Simrall, for plaintiff in error.
Alfred Mack, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge. This was an action in tort for the negli-
gent killing of Frank J. Schlosser, the intestate of the defendant in

[1] Who are fellow servants, see notes to Railroad Co. v. Smith, 8 C. C. A. 668;
Railway Co. v. Johnston, 9 C. C. A. 596; and Flippin v. Kimball, 31 C. C. A.
286.

error, while a fireman in the service of the plaintiff in error. There was·a verdict and judgment for the defendant in error. The intestate was killed by a collision at night between two freight trains while serving as fireman upon one of them. The colliding trains were respectively known as Nos. 36 and 37. The collision occurred at Blanchett, Ky., a station on the line of railroad operated by plaintiff in error. Train No. 36 was a north-bound freight, and entitled to the right of track. Train No. 37 was a south-bound freight, and was a "double-header"; that is, it was pulled by two engines, Schlosser being the fireman on the second engine. The trains were opposing trains, and were being moved under telegraphic orders from the train dispatcher at Lexington, Ky., who purposed that they should meet and pass at Blanchett. The contention of the plaintiff below was that the train dispatcher was guilty of negligence in sending a meeting order for these opposing trains which was not to be communicated to one of them (No. 36) until it should reach the meeting point, and that the collision occurred before No. 36 had received the order, and as a consequence of its failure to receive a meeting order before reaching the place of meeting. The insistence was that this method of giving a meeting order was in violation of rule No. 521, prescribed by the railroad company for the government of its train dispatcher and the movement of its trains, and that the rule thus prescribed was a reasonable rule, and its violation by the dispatcher negligence, for which the railway company was liable. Rule 521 was in these words:

"Meeting orders must not, under any circumstances, be sent for delivery to trains at the meeting point. There should always be at least one station between those at which opposing trains receive meeting orders."

The dispatcher sent a meeting order in duplicate for trains Nos. 36 and 37, which was in these words:

"No. 36 will get this order at meeting point, and meet No. 37 at Blanchett. No. 37 and No. 32 will meet at Hinton."

This order was sent to, and received by, train No. 37 at Williamstown, a station about eight miles north of Blanchett. The same order was sent to No. 36 at Blanchett, the meeting point, but was not received until after the collision. The obvious purpose of this rule was to give to meeting trains their meeting orders at least one station before either should reach the meeting point. Such a rule was calculated to insure a mutual understanding between trains, and enable each to govern itself accordingly. The rule required that train No. 36 should receive its meeting order at least one station before reaching the meeting point at Blanchett. If it had done so, it would have known that it would meet No. 37 at that station, and come under urgent obligation to avoid passing that station so as to block the entrance of No. 37 into the switch just north of the station which it was the duty of No. 37 to take.

District Judge Barr construed the rule as we have interpreted it. There was no error in this. The jury was instructed that the question as to whether a violation of the rule, so interpreted, was negligence, was for the jury; the rule being only prima facie evidence of what would be due care.

They were also instructed that the train dispatcher was a vice' principal, and not a fellow servant, and that the plaintiff in error was liable for the proximate consequences of the negligence of the dispatcher. There was no error in this. Railroad Co. v. Camp, 13 C. C. A. 233, 65 Fed. 952, 31 U. S. App. 213.

At the close of all the evidence the plaintiff in error asked for a peremptory instruction, which was denied. It is now urged that there was no evidence upon which the jury could reasonably find that the negligence of the plaintiff in error in the manner of giving the orders for these trains to meet at Blanchett was the proximate cause of the collision, and that the court erred in not so instructing the jury. The evidence did establish that a red signal light was showing as No. 36 approached Blanchett which could be seen by train No. 36 for a distance of about 18 telegraph poles. If this was not changed to white after the train whistled for the station, it signified, under the well-established rules of the company, that the train must be stopped before any part of it should pass the signal board, and that the conductor and engineer should then proceed to the telegraph office for orders. The rules required that signal stations should be approached with the train under such control as that it might be brought to a full stop if the red light was not changed to a white one after the train had called for the board. The evidence also established that the engineer saw this red signal light as soon as it could be seen, and that he at once whistled for the station. The red light not being at once changed to white, so as to authorize him to pass the station without stopping, he shut off steam, and endeavored to stop the train before passing the signal board. The speed of the train was at the moment not less than 25 miles per hour; the grade slightly descending; the train was unusually long and heavy; it did not succeed in stopping until the engine had passed about 300 feet north of the signal board, when, and as it stopped, it came into collision with train No. 37, which was approaching the station to take the siding in order that No. 36 might pass on the main track. The evidence also tended to show that if an effort had been made to get the train under control when the red signal light was first seen, instead of waiting to see whether it would be changed to a white light, it could have been stopped before passing the signal light, as required by the rule. The evidence showed that on this occasion the engineer of No. 36 made no effort to bring his train under control until he saw that the board was not changed to a white light in response to his station call, which was when he had run about eight or nine telegraph poles after first seeing the signal board and was within eight or nine poles of the board.

But there was also evidence that on this occasion the engineer commenced to stop at the place where engineers customarily and usually begin to stop when approaching Blanchett with a red light showing. It is now contended that, if the engineer on No. 36 had obeyed strictly the rule requiring him to approach every signal station with his train under such control as to enable him to stop if he does not receive a clear signal light after calling for the board, this collision would not have occurred, although the train dispatcher had

not given him notice to meet No. 36 at Blanchett, and that this negligence of the engineer was the negligence of a fellow-servant of the intestate, and the sole proximate cause of the collision. The same contention is advanced as to negligence of engineer of No. 37, it being argued that that train approached Blanchett from the north with full knowledge that it would there meet No. 36, and that the evidence establishes that it did not approach the station under such control as required by the rule of the company, and that the negligence of the engineer of No. 37 in this respect was the proximate cause of the collision, and not the negligence of the train dispatcher. It is enough in respect to the point made on the negligence of the engineer of No. 37 to say that there was a decided conflict as to whether he did not use all proper precautions required by the rules and by his knowledge of the fact that he was there to meet No. 36. It was clearly a question for the jury as to whether he in any way contributed to the collision.

Returning to the negligence of the engineer on No. 36, it is well settled that he was the fellow servant of the trainmen on No. 37. If his negligence was the sole proximate cause of the collision, there can be no recovery against the plaintiff in error. But, if his negligence be conceded as established by the undisputed evidence, still, if the negligence of the train dispatcher, who was a vice principal, contributed in producing the collision, the plaintiff in error is liable, although the negligence of a fellow servant was also contributory. Railroad Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266.

The case went to the jury upon the question as to whether the negligence of the train dispatcher, concurrently with the negligence of the engineer of No. 36, caused the collision, or whether the negligence of the train dispatcher proximately contributed thereto. The question of proximate negligence is ordinarily a question for the jury, upon all the facts and circumstances of the case. As said by the court in Railway Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 259:

"It is not a question of science or legal knowledge. It is to be determined as a fact in view of the circumstances attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied at the other end; that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. 2 W. Bl. 892."

It is altogether probable that, if the rules regulating the approach and stopping of trains at signal stations had been strictly observed, No. 36 would have been stopped before passing the entrance to the siding north of the signal board at Blanchett, and all evil consequences from the train dispatcher's negligence thereby avoided. But can we say, as matter of law or undisputed fact, that the negligence of the latter did not co-operate to bring about the collision? The rule of the company requiring that meeting orders should be given to each train at least one station in advance of the meeting point was framed doubtless with a view to secure greater vigilance and caution in approaching meeting points in consequence of this knowledge and mutual understanding of the meeting trains.

The rule is but supplementary to the rules governing the approach of all trains to telegraph signal stations. The latter rules apply regardless of the question as to whether it is a meeting point. The rule as to notice of meeting points may well be regarded as a wise precaution in addition to the rules governing the approach to and stopping at signal stations, especially when the road is a single-track road, as that operated by the plaintiff in error was. In view of the standard of due care enforced by the plaintiff in error, might not a jury well infer that, if the engineer of No. 36 had been warned that he would meet No. 37 at Blanchett, he would have exercised greater vigilance and care in bringing his train under control and in stopping it before passing the switch or siding, which he would then know the opposing train must endeavor to take in order to give him the right of track? The plaintiff in error did not regard the signal board order to stop as sufficiently guarding against the danger to opposing trains at meeting points. Why? The inquiry must be answered according to the deductions to be drawn from the common understanding of the probable effect in arousing a higher degree of vigilance and caution as a consequence of receiving a warning as to the meeting points of opposing trains on a single-track railroad. Did all the facts constitute a chain of events so connected as to make a natural whole, or was the negligence of the engineer of No. 36 a new and independent cause, wholly unaffected by the primary negligence of the train dispatcher? If the negligence of the engineer of No. 36 in failing to get his train under such control as to enable him to bring it to a full stop before passing the signal board was negligence wholly disconnected from the primary fault of the train dispatcher, it was an intermediate, independent, and efficient cause for the collision which would constitute the sole proximate cause of Schlosser's death. But if, on the other hand, the negligence of the engineer of No. 36 was in part super-induced by his ignorance that he was to meet No. 37 at Blanchett, the original fault of the train dispatcher may be considered as reaching to the effect and proximately contributing to it. The circumstances did not so indisputably demonstrate that the causal connection was not proximate as to justify the court in taking the case from the jury. McDonald v. Railroad Co., 20 C. C. A. 322, 74 Fed. 104; Telegraph Co. v. Zopfi, 19 C. C. A. 605, 73 Fed. 609; Railroad Co. v. Sutton, 11 C. C. A. 251, 63 Fed. 394; Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256. The judgment is accordingly affirmed.