## PENNSYLVANIA CO. v. FISHACK.

(Circuit Court of Appeals, Sixth Circuit. July 1, 1903.)

No. 1,142.

1. MASTER AND SERVANT—OPERATION OF RAILROAD—DUTY OF COMPANY.

A railroad company owes a positive duty to its employés with respect to the construction and maintenance in proper repair of its tracks, cars, and other appliances, but with respect to the operation of the road its duty extends no further than to exercise ordinary care to provide a sufficient number of reasonably competent employés, make proper rules for their government, and to exercise proper supervision over them. When that has been done, it is not liable for an injury to an employé in the operation of the road, through the negligence of other employés in the operating department or their failure to observe the rules.

2. SAME—LIABILITY FOR INJURY OF EMPLOYÉ.

A railroad company is not liable for the injury of a fireman on a switch engine through a collision at night with cars standing on a switch track, brought about by an erroneous statement by the yard master that the track was clear.

3. SAME—FELLOW SERVANTS—YARD MASTER AND FIREMAN OF SWITCH ENGINE.

A yard master in charge of switch yards of a railroad, who is subordinate to a general yard master, who is in turn subordinate to a train master, and he to a superintendent, is not a vice principal, but a fellow servant, in his relation to other employés engaged in switching in the yard.

4. SAME—RULE GOVERNING.

In the absence of a governing statute of the state, where an injury was received, a federal court will apply the general rule of such courts in determining who are fellow servants, regardless of where the contract of employment was made.

5. SAME—ACTION FOR INJURY—PLEADING.

Where, in an action by an employé against a railroad company to recover for an injury, plaintiff alleged that the order resulting in the injury was given by defendant's superintendent or train dispatcher, which allegation was denied, it was competent for defendant to prove, under such denial, that the order was given by a yard master, and to rely on the fact that he was a fellow servant with plaintiff, without pleading such fact.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This action was brought by defendant in error against plaintiff in error in the common pleas court of Richland county, Ohio, from whence it was removed to the lower court, to recover damages for a personal injury sustained by him whilst in its employ as a fireman on one of its yard engines. The injury was quite serious, and he obtained a verdict and judgment for the sum of $15,000. His regular employment was not in the yard, but out on the road. On the night of November 18, 1900, by direction of defendant, he acted as fireman on the head engine of two yard engines engaged in transferring a train of 39 freight cars from what is termed the outer depot on defendant's road west of Allegheny river, across that river, and thence north to Twentieth street, in the city of Pittsburg, a street running at right angles to the river. The eastern end of the bridge across said river lies between Tenth and Eleventh streets, in said city, and the territory lying between those streets and west of Penn avenue, which runs parallel to the river, is known as the Penn street yard of defendant. Defendant's railroad extends

¶ 3. Who are fellow servants, see notes to Railroad Co. v. Smith, 8 C. C. A. 668; Railway Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

See Master and Servant, vol. 34, Cent. Dig. §§ 442, 510.

no further north than Eleventh street. At that point it connects with the railroad of the Allegheny Valley Railway Company, and the territory from thence to Twentieth street, the destination of said train, is known as the Twentieth street yard of said railway company. From a point just north of Sixteenth street in said yard there are two tracks extending northwards past Twentieth street, connected there by means of a switch. One of them is known as the main track, and the other as track No. 1. No switchman is stationed at the switch, and it is manipulated by the trainmen of passing trains. At night a lamp is used to indicate which track is open, red indicating No. 1 and white the main track. Between Sixteenth and Seventeenth streets, in the course of track No. 1, is a sharp reverse curve between buildings close to the track on each side. On the night in question a train of freight cars was stationed at or near the north end of this curve.

The Allegheny Valley Railway Company had a yard master in charge of said Twentieth street yard, stationed at Twentieth street, and the defendant had a yard master with a clerk in charge of said Penn street yard, stationed at the eastern end of said bridge. He was subject to a general yard master, who had charge of all defendant's yards between Union Station, in Pittsburg, and Jack's Run, Allegheny; he, in turn, to a train master; and he, in turn, to a superintendent. The stations of the two yard masters referred to were connected by telephone. By an order of said railway company it had been provided that the movement of trains between Eleventh and Twenty-Eighth streets should be under the direction of the yard master at Twentieth street; and, further, that north-bound trains should come to a full stop 100 feet south of Sixteenth street crossing, and should not proceed without sending a flagman around the curve between Sixteenth and Seventeenth streets, hereinbefore referred to. A copy of this order had been posted on the conductor's bulletin board in said Penn street yard and elsewhere by defendant prior to said night since 1896 or 1897.

The freight cars in the train upon which plaintiff was then acting as fireman were being transferred, as stated, in order to be delivered by defendant to said railway company. When it reached the eastern side of the bridge it stopped, and the engineers and conductor thereof were directed by one Miller, a yard conductor, who on that occasion was acting as defendant's night yard master, in charge of said Penn street yard, to proceed by way of said track No. 1 to Twentieth street. There was evidence tending to show that he said that it was all right to proceed by said track, and that everything was clear.

Before giving this direction he communicated with the yard master at Twentieth street through his clerk, and was told to order the train to take said track. Being thus directed, the train proceeded on its course. The requirement as to stopping the train and sending a flagman around the curve was not complied with. The lamp at the switch showed red, thereby indicating that track No. 1 was open, and the train proceeded along said track until it collided with the cars standing thereon, as hereinbefore stated. By reason of the curve and buildings, the cars could not have been seen in time to prevent the collision. It was this collision that caused the injury complained of, and it happened shortly after midnight, on the morning of November 19th.

Amongst other errors assigned for reversal is the refusal of the lower court to give a peremptory instruction to find for defendant, requested at the close of all the evidence.

J. R. Carey, for plaintiff in error.
W. S. Kerr and C. H. Workman, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge, after making the foregoing statement, delivered the opinion of the court.

This case really presents a question as to the liability of a railroad company for an injury to one of its employés on one of its trains

whilst being operated by its employés upon the railroad of another company, under some traffic arrangement, occasioned by a collision between it and cars stationed thereon. But, as stated in his petition, plaintiff's case was as if his injury had been received whilst the train was being operated on defendant's own road. No reference is made therein to the railroad, cars, or employés of any other company as having any connection therewith. And the lower court refused to permit certain of defendant's witnesses to testify as to the connection of the railroad, cars, or employés of the Allegheny Valley Railway Company therewith upon the idea that it had not been affirmatively pleaded. All the allegations of the petition, however, except as to the defendant's corporate existence and operation as lessee of the Pittsburg, Fort Wayne & Chicago Railroad through the state of Ohio and into the state of Pennsylvania, and as to plaintiff being in its employ and injured on the night in question, in the city of Pittsburg, were denied by the answer. Under this denial defendant was entitled to prove the connection of said railroad, cars, and employés therewith, because the same was inconsistent with the allegations of the petition as to how the injury had been caused. But no point is here made of this action of the lower court, inasmuch as the facts, substantially as we have set them forth in the foregoing statement, appeared from the testimony of plaintiff's witnesses and that of defendant's, which was permitted to go to the jury. Neither is it necessary to consider the question whether there was a variance between the allegations of the petition and the proof; for we are of the opinion that the defendant was entitled to the peremptory instruction asked for by it upon the merits of the question, for the reasons hereinafter stated. Nor will we take further notice of the fact that the injury was received on the railroad of the Allegheny Valley Railway Company or the relation of its employés thereto, because there is nothing in these circumstances to affect the disposition of this case. It will be disposed of the same as if the injury had been received on defendant's railroad, and none but its employés were connected therewith.

The negligence complained of in the petition was the failure to have a switchman at the switch connecting the main track and track No. 1; the direction given to the engineers and conductor to proceed along track No. 1, whilst it was so obstructed, which direction, it was alleged, was given by defendant's superintendent, train dispatcher, or other of its employés under whose orders and directions its trains and the train upon which plaintiff was employed were operated; and the allowing said cars to stand upon track No. 1 and obstruct it.

The lower court instructed the jury that there was no liability on defendant's part because of the failure to have a switchman at the switch, as that failure was not the proximate cause of the injury; and, further, that, if they believed from the evidence that the failure of the engineers and conductor to obey a rule of the company requiring the train to come to a stop and a flagman to be sent ahead was the proximate cause of plaintiff's injury, the defendant was not liable, because the engineers and conductor were fellow servants of plaintiff. On the other hand, the jury were told that if the yard master at Penn street yard, in giving the order to take track No. 1, represented that

the track was clear, the defendant was liable. In the course of the charge it was said:

"The fault complained of by the plaintiff in this case is that the yard master on the night in question, in the performance of his duty, or in the line of his duty, told the conductor, or conveyed the information to the conductor and engineer, those in charge of this train upon which plaintiff was employed, to the effect that the train should take No. 1 track, and that it was open. There is testimony tending to prove that the business of the yard master was to direct the position and movement of cars and trains throughout certain territory. It was necessary that he give orders, or rather directions than orders—information rather than orders—as to the condition of cars upon these various tracks. It is claimed by the plaintiff that upon this occasion he stated that the track No. 1 was clear. Now, the performance of the duties in that regard, indicating whether a track was clear or not, was one of the means employed by the railroad company to keep its place of work for its employés safe; and if there was misdirection, if there was a statement upon the part of the yard master that the track was clear, when, as a matter of fact, it was not clear, to go onto the track, and collide with anything upon the track, and injure the plaintiff, then there would be a liability shown by the plaintiff of the railroad company with respect to the injuries that were suffered."

And again:

"It is claimed by the defendant here that the yard master who gave the order, as it is called, or who made the representation upon this occasion that No. 1 track was clear, was a fellow servant of this plaintiff, and that therefore the injury received by the plaintiff arose from the fault and negligence of the fellow servant, and as a consequence the plaintiff cannot recover. I say to you, as a matter of law, that the yard master, with respect of representations as to the openness or clearness of the track, was not a fellow servant of the plaintiff."

This portion of the charge upon which the case hinged was based upon the idea that the duty of a railroad company to its employés to use due care to see that its tracks are reasonably safe is without limitation, and it is only upon such a view of such duty that it can be claimed that defendant was liable for the injury complained of. Otherwise the yard master was the fellow servant of plaintiff, and defendant was entitled to the peremptory instruction asked and refused. There is, however, a limitation upon such duty of a railroad company, and it is this: So far as safety depends upon the manner of construction and maintenance of the tracks, the duty is upon the railway company to use due care to see that they are reasonably safe. In connection with the operation of trains thereon, it is its duty to use due care to employ an adequate force of hands, reasonably competent to operate them, to promulgate adequate rules and regulations for their conduct, and to exercise an adequate supervision over it; but its duty here goes no further. The duty of complying with the rules and regulations which have been promulgated and of carefully operating the trains is a duty incumbent upon those employés to whom their operation has been intrusted. All employés so engaged are fellow servants, and no recovery can be had against the railway company for an injury sustained by one of such employés due to the negligence of another. If the law were not as thus stated, in every collision between two trains those employés receiving injury who were not in fault would be entitled to recover against the railway com-.

pany because of the negligence of those employés who were in fault. That such is the law has been laid down in a number of cases. In the case of Howard v. Denver & R. G. Ry. Co. (C. C.) 26 Fed. 837, Judge Brewer said:

"The negligent use by one employé of perfectly safe machinery will seldom be adjudged a breach of the master's duty of providing a safe place for other employés. Such a construction would make any negligent misplacement of a switch, any negligent collision of trains, even any negligent dropping of tools about a factory, a breach of the duty of providing a safe place. The true idea is that the place and the instruments must in themselves be safe, for this is what the master's duty fairly compels, and not that the master must see that no negligent handling by an employé of the machinery shall create danger."

In that case he held that no recovery could be had for the death of a fireman on a passenger train caused by collision with an engine running light, due to the negligence of the engineer thereof.

In the case of St. Louis, I. M. & S. Ry. Co. v. Needham, 63 Fed. 107, 11 C. C. A. 56, 25 L. R. A. 833, Judge Sanborn said:

"The line of demarcation between the absolute duty of the master and the duty of the servant is the line that separates the work of construction, preparation, and preservation from the work of operation. Is the act in question work required to construct, to prepare, to place in safe location, or keep in repair the machinery furnished by the employer? If so, it is his personal duty to exercise ordinary care to perform it. Is the act in question required to properly and safely operate the machinery furnished, or to prevent the safe place in which it was furnished from becoming dangerous through its negligent operation? If so, it is the duty of the servants to perform that act, and they, and not the master, assume the risk of negligence in its performance. The roadbed, ties, tracks, stations, rolling stock, and all the appurtenances of a well-equipped railroad together constitute a great machine for transportation. It is the duty of the railroad company to use ordinary care to furnish sound and a reasonably safe machine, to use due diligence to keep it in proper repair, and to use ordinary care to employ reasonably competent servants to operate it; but when this duty is performed the duty rests upon the servants to operate it carefully."

And again:

"The test of liability is not the safety of the place nor of the machinery at the instant of injury, but the character of the duty the negligent performance of which caused the injury. Was it a duty of construction, preparation, or repair, or was it a duty of operation of the machine?"

In that case the Circuit Court of Appeals, Eighth Circuit, held that no recovery could be had for the death of a fireman on a passenger train caused by the negligence of the conductor of a construction train in leaving open a switch which it was his duty to close.

In the case of Martin v. Atchison, T. & S. F. R. Co., 166 U. S. 339, 17 Sup. Ct. 603, 41 L. Ed. 1051, it was held that no recovery could be had by a laborer on a hand car injured by the negligence of a section foreman in charge of the car and the conductor and hands on a work train. In the course of his opinion Mr. Justice Peckham said:

"The counsel for the plaintiff has argued before us that the defendant must be held responsible because the plaintiff had been directed by the foreman under whose orders he was placed to look north while he was on the car, and had received the foreman's assurance that he (the foreman) would warn him of the approach of danger, and that as the foreman failed to do so it was the failure of the defendant to do something which it was bound

as a master to do in furtherance of the obligation it was under to see that the plaintiff had a reasonably safe place in which to perform his work. We do not perceive that the doctrine as to the duty of the master to furnish a safe place for the servant to work in has the slightest application to the facts of this case. There is no intimation in the evidence, nor is any claim made, that the hand car upon which the plaintiff was riding was not properly equipped and in good repair, and in every way fit for the purpose for which it was used. It was a perfectly safe and proper mode of transit in and of itself from the station at Albuquerque to the point where the plaintiff was going to work. The negligence of the section foreman in failing to note the approaching train and to give the proper warning, so that the car might be taken from the track, was not the neglect of any duty which as master it owed the plaintiff. If the car were rendered unsafe, it was not by reason of any lack of diligence on the part of the defendant in providing a proper car, but the danger arose simply because a fellow servant of the plaintiff failed to discharge his own duty in watching for the approach of a train from the south."

And in the recent case of Brady v. Chicago & G. W. Ry. Co., 114 Fed. 100, 52 C. C. A. 58, 57 L. R. A. 712, Judge Sanborn said:

"It is the duty of the railroad company to use ordinary care to furnish a reasonably safe railroad machine; to exercise reasonable diligence to keep it in repair; to use ordinary care to employ a sufficient number of reasonably competent servants to operate it; to establish reasonable rules for, and to exercise proper supervision of, its operation. But when this duty is performed an equally positive duty rests upon the servants to keep the great machine from becoming dangerous by their operation of it, and to work it with reasonable care."

In that case the Circuit Court of Appeals, Eighth Circuit, held that no recovery could be had for the death of a foreman of a switch crew of the defendant, in charge of a train composed of an engine, tender, and caboose backing in the nighttime through the yard of the St. Paul Union Depot Company, stationed on the forward end of the caboose as it backed in the darkness, and whose death was caused by the train colliding with a refrigerator car standing on a transfer track of the company called a "dead track," which the train took instead of going around it, because the switch lights were green, thereby indicating that the dead track was clear.

The principle announced and applied in these cases is reasonable, and it is incumbent on us to follow them, and apply that principle to this case, if applicable to it. Here what rendered the track unsafe was the presence on track No. 1 of the cars with which plaintiff's train collided, left there presumably by some employé or employés connected with the operation of trains thereon, and the engineers and conductor of his train were led to take that track because of the direction of the yard master at Twentieth street, who had charge of the yard where it was located, communicated through the yard master at Penn street yard, and of the assurance of the latter, according to plaintiff's contention, that said track was open and clear. No complaint is made of any lack of care in constructing or maintaining the track at the place of injury. The sole complaint is of lack of care in permitting the cars to be there, and in directing plaintiff's train to go there with the representation that the track was clear. This lack of care was in the operation of the railroad. The employés guilty of it were employés connected with the operation thereof. They

were fellow servants, therefore, of plaintiff in this matter, and no recovery can be had for the injury he received because of their negligence.

It is urged by counsel for plaintiff that the yard master should be held to have been a vice principal and not a fellow servant of plaintiff, on the ground that he was the head of a great department of the defendant, under the holding in the case of Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, that a head of such a department of a railroad company is a vice principal, and not a fellow servant of the employés subject to him. Their line of reasoning is this: It has been held that a train dispatcher is a vice principal, as the head of a great department. A yard master may be said to be a train dispatcher in relation to the trains being operated in his yard, inasmuch as he has control of their running therein. The decisions are not uniform that a train dispatcher is a vice principal within the Baugh Case, though the decided weight of authority is to that effect. 3 Elliott on Railroads, § 1322. This court has held that he is. B. & O. R. R. Co. v. Camp, 13 C. C. A. 233, 65 Fed. 952; Felton v. Harbeson, 104 Fed. 737, 44 C. C. A. 188.

But the likeness between the train dispatcher and the yardmaster in the matter of having direction of the running of trains, in so far as it exists, is not sufficient of itself to justify classing the latter with the former as a vice principal. And this court has so held in the case of Cincinnati, N. O. & T. P. Ry. Co. v. Gray, 101 Fed. 623, 41 C. C. A. 535, 50 L. R. A. 47.

In the case of Thomas v. Cincinnati, N. O. & T. P. Ry. Co. (C. C.) 97 Fed. 245, which was the former case in the lower court, Judge Taft said:

"The master found that the yard master was a vice principal. I cannot agree in this conclusion. It is true that the evidence shows that the yard master had complete control of the yard; he was made responsible for its condition; that he was authorized to employ and discharge men; and that he directed the incoming and starting of trains. I do not think, however, that under the principles laid down in the Baugh Case, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, this would put him at the head of one of the departments of the railroad. The nature of his duties was not at all unlike that of a station agent, only that he had more men under him. He was subject to the orders of the superintendent, whose office was at the station in Somerset. He was subordinate to the trainmaster. It would serve no good purpose to discuss at length or restate the grounds of the rule which must control the federal courts in determining the question whether an employé is a fellow servant or not. They have been laid down with elaboration in the Baugh Case, already referred to, and have been reaffirmed from time to time by the Supreme Court in numerous cases. Railroad Co. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; Railroad Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994; Oakes v. Mase, 165 U. S. 363, 17 Sup. Ct. 345, 41 L. Ed. 746; Railroad Co. v. Poirier, 167 U. S. 48, 17 Sup. Ct. 741, 42 L. Ed. 72; Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390. In Grady v. Railway Co., 34 C. C. A. 494, 92 Fed. 491, decided by the Court of Appeals of this circuit March 7, 1899, it was held that the foreman in charge of the freight-car repair shops, the immediate subordinate of the master car builder, who had control of the work of car repairs—a branch of the mechanical department of the road, at the head of which was the master mechanic—was a fellow servant of the workman, who, it was charged, was injured through his negligence. In that case the court said: 'The Baugh Case has set such limits to the vice principal doctrine that it is exceedingly

difficult to suggest a position outside of those of the superintendents or acting superintendents of the various great departments of the road the incumbent of which is not to be regarded as a fellow servant of all the other employés. The Ross Case, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, it is said, has never been expressly overruled. This is true, but it has been so limited to its peculiar facts as to make it of no force as authority in any case where those facts are not exactly presented.' "

The railway company was held liable in that case notwithstanding the fact that the yard master was decided to be a fellow servant of the employé who was injured, because the company had not given proper instructions as to the use of an automatic switch which was the cause of the injury.

It is suggested by counsel for plaintiff that the question as to whether the yard master was the fellow servant of plaintiff is to be determined by section 3 of the Ohio statute passed April 2, 1890 (87 O. L. 149), in relation to fellow servants, because it appeared from the evidence that the contract of employment of the plaintiff was made in Ohio. The point is not well taken. The accident happened in the state of Pennsylvania, and in the absence of a statute there the federal rule in relation to law of fellow servants must be applied. N. N. & M. V. Ry. Co. v. Howe, 3 C. C. A. 121, 52 Fed. 362; B. & O. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772.

It is further suggested by said counsel that advantage cannot be taken of the fact that the yard master was a fellow servant of plaintiff, because it was not pleaded by defendant that he was. But it was not necessary for defendant to so plead, even if it be true that in any case it is necessary for a master when sued for injury caused by the negligence of its servants to do so. Here the plaintiff alleged that the order complained of had been given by defendant's superintendent, train dispatcher, or other of its employés under whose orders and directions its trains and the train upon which plaintiff was employed were operated. The petition, if nondemurrable, was so because this allegation should be treated as amounting to an allegation that the order had been given by the head of a great department of defendant, within the meaning of the Baugh Case. It was denied and put in issue by defendant. Under this denial, it was entitled to show that the order was not given by the head of such a department, but by the yard master, a fellow servant of plaintiff.

Our conclusion, therefore, is that the judgment of the lower court should be reversed for the error in refusing to give the peremptory instructions requested at the close of all evidence, and the case is remanded for proceedings consistent with this opinion.