## GRADY v. SOUTHERN RY. CO.

### (Circuit Court of Appeals, Sixth Circuit. March 7, 1899.)

#### No. 634.

**1. MASTER AND SERVANT—RULES FOR THE PROTECTION OF EMPLOYES FROM INJURY.**

Where a railroad company, through its superintendents in charge, had made and enforced a rule in its car-repair shop that employés working on or along any of the tracks in the shop should be given personal notice when cars were to be moved on such track, it cannot be charged, by an employé who is injured by moving cars, and who had knowledge of such rule, with negligence in failing to establish proper regulations for the protection of the men, merely because the rule was not printed.

**2. SAME—FELLOW SERVANTS—VICE PRINCIPALS.**

The foreman of a freight-car repair shop of a railroad, who is a subordinate of the master car builder, who alone employs and discharges men in his department, which itself is a branch of the mechanical department of the road, under the control of the master mechanic, is not a vice principal, as to another employé in such shop, but a fellow servant, for whose negligence, resulting in an injury to such employé, the railroad company is not liable.[1]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

The action below was brought by George W. Grady against the Southern Railway Company to recover damages for injuries sustained by Grady while in the service of the railway company as a car repairer, caused, as he avers, by the negligence of the railway company. There were three counts in the declaration. The first count charged that the defendant carelessly, negligently, and wrongfully inflicted said injuries upon the plaintiff, causing him great suffering and total and permanent disability. There was in this count no specification of the negligence by which the injury was caused. This count was eliminated by demurrer. The second count averred that while the plaintiff, in the discharge of his duties, was passing between two standing cars, and across one of the defendant's tracks, the defendant suddenly, negligently, and without warning, pushed said standing cars together, thereby catching the body of the complainant between the cars and inflicting the injury. The third count charged that the defendant was negligent in its failure to employ a competent and careful superintendent of the shops and yards, and in its failure to make and enforce reasonable regulations for the protection of plaintiff while engaged in his said work, and that the injuries were caused by the failure of the defendant, through its superintendent of said shops and grounds, to give proper notice to the plaintiff before moving said cars.

The facts of the case were as follows· The plaintiff was a carpenter and car repairer in the service of the Southern Railway Company at its freight-car repair shops, in Knox county, Tenn. The shed in which the work was done had six parallel tracks, all connecting with a so-called "house track" outside the shed. Cars in need of repairs were pushed in by way of this house track onto the various tracks, and cars when repaired were pulled out therefrom in the same way. The tracks were numbered 1, 2, 3, 4, 5, and 6. Only freight cars were repaired in this shed. The whole branch of repairs was in the mechanical department, at the head of which was the master mechanic of the road, J. B. Michael. The work of car repairs in that department was under the control of Master Car Builder A. B. Corinth, who was the immediate subordinate of the master mechanic, Michael. These particular sheds

---

[1] As to who are fellow servants, see note to Railroad Co. v. Smith, 8 C. C. A. 668. and supplementary notes to Railway Co. v. Johnston, 9 C. C. A. 596, and Flippin v. Kimball, 31 C. C. A. 286.

were under the control of Patterson, an immediate subordinate of Corinth, and the foreman of freight-car repairs. Subordinate to Patterson in the superintendence of these car sheds was Ed Miller, known as the "gang foreman." Corinth alone employed and discharged men. It appears by the undisputed evidence of the witnesses on both sides that under a rule adopted by the predecessor of Patterson, and verbally promulgated, whenever a line of freight cars was to be moved in or out on any track the foreman or assistant foreman, or some man sent by one of them, went the whole length of the track, and notified in person every man working thereon that cars were to be moved on that track. It further appeared that, when Patterson succeeded as foreman, he enforced this rule still more strictly. The plaintiff himself said that such notification was invariably given, and that he never knew it not to be given, except upon the occasion of his injury; that the men working upon the cars paid no attention whatever to the sounding of the bell on the engine, or any other signal, because they could always depend upon receiving notice, in the way already mentioned, that cars were to be moved upon a particular track. Upon the day of the accident the plaintiff was working on track No. 1. In order to get a necessary tool, he was obliged to go across track No. 2 to track No. 3, where his tool chest had been placed by direction of the foreman. A train of cars was standing on track No. 2, with an opening between the last two cars. A fellow workman was with him. The fellow workman passed through between the two cars, in advance of him, and crossed without injury. The plaintiff, however, put himself between the cars just at a time when the front car was pushed against the back car. He was injured severely. The plaintiff says that he heard no warning from any one that the train on track No. 2 was to be pulled out. There was evidence that the usual warning was given by one whom the assistant foreman had sent for the purpose. There was no evidence of the unfitness of a superintendent or other employé. At the close of the plaintiff's evidence, upon a motion by the defendant, the court directed a verdict for the defendant on the ground that, if the injury was due to the negligence of any one other than the plaintiff, it was due to the negligence of a fellow servant of the plaintiff, for which the defendant company was not liable.

Jerome Templeton, for appellant.

W. L. Welcker, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge. The judgment of the circuit court must be affirmed. The evidence leaves no ground whatever for the contention that a reasonable rule had not been adopted by the defendant company for the notification of every one engaged in and about the cars standing upon the repair tracks that they were about to be moved. The system of notice was that of personal notice to every employé engaged in and about the cars. It is true that the rule was not printed, but that it was a well-recognized rule is conclusively shown by the evidence, without a single contradiction. The necessity for written or printed rules is that the course of conduct may be definitely prescribed, and may be more certainly brought to the attention of every person having to enforce or execute the rules, or to rely upon their execution. In this case the person charged with the execution of the rule testified that he did give the notice, and also testified to his knowledge of the rule. The plaintiff, whose right it was to rely upon the rule, testified in the most explicit terms that there was such a rule, and that it had been constantly observed until his injury. The failure to print the rule therefore could in no way have contributed to the injury here complained of. The charge of

negligence based upon the absence of a sufficient rule therefore fails for utter lack of evidence.

The second ground urged for reversal is the negligence of the foreman or assistant foreman, or some man selected by them, in failing to comply with the rule in this particular instance. It is said that this question ought to have been left to the jury. The foreman who had charge of moving the cars was a foreman in the freight-car repair sheds, and, even if we assume that it was his negligence in this particular instance which caused the accident, we should still be obliged to find, under the decision of the supreme court of the United States, that he only was a fellow servant of the plaintiff, and that his negligence in this instance was not the negligence of the company. He was not at the head of a distinct department. He was at the head of one of the many branches (to wit, the freight-repair branch) of a distinct department (to wit, the mechanical department). In the case of Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, the question was whether the defendant mining company was liable to one of its employés for injury suffered through the negligence of another of its employés, named Finley. The defendant introduced evidence, which was uncontradicted, that its business was under the control of a general manager, and was divided into three departments, the mine, the mill, and the chlorination works, each of which departments had a foreman or superintendent under the general manager; that the mine department had three shifts or gangs of workmen, two by day, and one at night; and that Finley was boss of the one at night. The jury had returned a verdict for the plaintiff in the circuit, and a judgment entered thereon was affirmed in the court of appeals for the Ninth circuit. The judgment of the circuit court of appeals was reversed by the supreme court. Mr. Justice Gray, delivering the opinion, said:

"Finley was not a vice principal or representative of the corporation. He was not the general manager of its business, or the superintendent of any department of that business. But he was merely the foreman or boss of the particular gang of men to which the plaintiff belonged. Whether he had or had not authority to engage and discharge the men under him is immaterial. Even if he had such authority, he was none the less a fellow servant with them, employed in the same department of business, and under a common head. There was no evidence that he was an unsuitable person for his place, or that the machinery was imperfect or defective for its purpose. The negligence, if any, was his own negligence in using the machinery, or in giving orders to the men. The case is governed by a series of recent decisions of this court, indistinguishable in their facts from this one. Railroad v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269; Railroad v. Charless, 162 U. S. 359, 16 Sup. Ct. 848; Same v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843; Martin v. Railroad, 166 U. S. 399, 17 Sup. Ct. 603. See, also, Wilson v. Merry, L. R. 1 H. L. Sc. 326."

In addition to the cases cited by the learned justice, reference may also be made to Martin v. Railroad, 166 U. S. 398, 17 Sup. Ct. 603, Railroad Co. v. Baugh, 149 U. S. 369, 13 Sup. Ct. 914, and to Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397. It seems to us very clear that the duties of the foreman in this case were not those of a superintendent in a department of the railroad company, such that the foreman of it could be regarded as a vice principal. It is

useless to elaborate the discussion upon this point, because the ques-
tion is to be determined by the decisions of the supreme court, and
not by the general discussion of public policy. The Baugh Case has
set such limits to the vice-principal doctrine that it is exceedingly
difficult to suggest a position, outside of the superintendent or acting
superintendent of the various great departments of the road, which
will not be filled by fellow servants of all the other employés. The
Ross Case, 112 U. S. 377, 5 Sup. Ct. 184, it is said, has never been
expressly overruled. This is true, but it has been so limited to its
peculiar facts as to make it of no force as authority in any case where
those facts are not exactly presented.

The assumption that the accident was due to the foreman of the
car shed has, moreover, little, if any, evidence to support it. If
there was negligence in this regard, it was in all probability the negli-
gence either of the assistant foreman, or of some workman selected
and directed to give the usual alarm. Clearly, the neglect of either
would be that of a fellow servant. These views lead to an affirm-
ance of the judgment.