ILLINOIS CENT. R. CO. v. HART.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1910.)

No. 1,987.

1. COURTS (§ 372*)—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS—QUESTIONS OF GENERAL LAW.

In the absence of a state statute governing the subject, the question of the liability of an employer for an injury to an employé is one of general law, as to which the federal courts are not bound by the decisions of the state courts.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 372.*

State laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. MASTER AND SERVANT (§ 191*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT.

It is the settled rule in the federal courts that an employer is not liable for an injury to an employé occasioned by the negligence of another employé engaged in the same general undertaking, and it is not necessary to the application of this rule that an employé should be engaged in the same operation or particular work; but it is sufficient if the two are in the employment of the same master and engaged in the same common enterprise, both performing duties tending to accomplish the same general purpose, although they may be in different departments.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 475–479; Dec. Dig. § 191.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

3. MASTER AND SERVANT (§ 185*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—CUSTOM OF DOING WORK.

In order that a custom of railroad employés to do work in a particular manner should be binding on the company, and render it liable for an injury resulting to another employé, the custom must have been known to it, or have been so general that its knowledge must be presumed.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 185.*]

4. MASTER AND SERVANT (§ 185*)—DUTY OF RAILROAD COMPANY—OPERATION OF ROAD.

While a railroad company owes a positive and nondelegable duty to its employés with respect to the construction and maintenance in proper repair of its cars, tracks, and other appliances, yet with respect to the operation of its road its duty extends no further than to exercise ordinary care to provide a sufficient number of reasonably competent employés, make proper rules for their government, and exercise proper supervision over them, and when that has been done it is not liable for an injury to an employé in the operation of the road through the negligence of other employés in the operating department or their failure to observe the rules, notwithstanding such negligence makes the place unsafe to work in.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

5. MASTER AND SERVANT (§ 198*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—FELLOW SERVANTS—RAILROAD EMPLOYÉS.

Plaintiff was employed by defendant railroad company as signalman; his duty being to keep the boxes and appliances used in connection with its block signal system in good condition and repair. While working at such employment, at a place on the outside of one of the tracks of defendant's double-track road, the baggageman on a rapidly moving train on the opposite track kicked a block of ice from the car, and its momentum caused it to slide across the tracks and strike and injure plaintiff. The

ice was furnished by defendant for the use of a section crew, and was put on the car by a station agent, who directed that it be kicked off at the crossing, as it was. *Held*, that plaintiff and the baggageman were fellow servants, and that, in the absence of evidence that the station agent had authority from defendant to give the directions he did, or of a custom to so deliver the ice from the moving car so general as to be presumed to have been known to defendant, it was not liable for the injury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 198.*]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

Action by Robert Lee Hart against the Illinois Central Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

The defendant in error (plaintiff below, and hereafter called the plaintiff) recovered verdict and judgment against the plaintiff in error, as defendant below, on account of personal injuries suffered by the plaintiff. The case was heard upon the following statement of facts, agreed upon between counsel at the trial:

"On the 17th of September, 1907, Robert Lee Hart, the plaintiff, was employed by the Illinois Central Railroad Company as a signalman. His duties were to keep the boxes and appliances used with the electric signal service of the company in repair, and he was at that time assigned to a certain section of the railroad. At the place where he was assigned, the block signal service was in operation on the line of the defendant, Illinois Central Railroad Company, and its railroad at that place consisted of a double track, one track for the use of its north-bound trains, and one track for the use of its south-bound trains. The trains operated by the defendant, Illinois Central Railroad Company, were operated by means of electric block signals. These signals are in the form of a high pole with a semaphore, and work automatically by means of electric batteries and wires; the semaphore being connected with the rails of the track, so that a train, in passing over the rails by one of the signals will cause the same to work automatically, and to display a signal which will indicate to any other train approaching on the same track that the block, which is the portion of the track between signals, is occupied by another train, and, under the rules of the company, no train is permitted to enter a block which is so occupied. When the train passes out of the block, the signal is automatically displayed so as to indicate that the block is empty and not occupied by a train; and all of the trains upon the road are operated in this manner, and proceed in accordance with the signals from the semaphores of the various blocks. On the above date, to wit, September 17, 1907, Hart was engaged in the discharge of his duties as a signalman, and in the act of repairing one of the batteries in connection with the block signal service, near the town of East Cairo, and so engaged on the west side of the west or south-bound track, when a passenger train of the defendant company approached, running on the east track, at the rate of some 50 or 60 miles an hour, and just before the train reached the place where Hart was at work, and at the crossing of a road, the baggage master of the train threw or kicked from the baggage car, a bag of ice, weighing about 100 pounds, and which bag, owing to the momentum of the train, when it struck the ground, skidded across the south-bound track, and out more than 20 feet from the north-bound track, to the place where Hart was standing, and struck and broke his leg, and otherwise injured him. The bag of ice was put upon the train south of East Cairo, for the purpose of being thrown or kicked off at this place. It was company ice; that is, ice which the railroad company furnished to its section men in warm weather, and was thrown off at this place for the use of those employés. That this was done without the knowledge of this man, and that he, at the time, was a stranger on that part of the work, had simply been put there a few days in interchange with another employé of the company, who had been sick at that time; that this bag of ice was directed by the depot agent at the town of Wickliffe to be so kicked off of

---

that fast running train, and when it was placed upon the train by the agent, or by his orders, it was known that the train would not stop at that place, and it was indicated that it should be kicked off from the train when running at this high rate of speed."

It was agreed that, if the defendant should be held liable, the amount of the verdict for plaintiff should be $3,500. At the conclusion of the statement (no other evidence being introduced) the defendant moved for the direction of a verdict in its favor, upon the ground that the men engaged in the operation of the train, including the baggage master, were fellow servants of the plaintiff. This motion was overruled, and the jury instructed to return a verdict in favor of the plaintiff, for $3,500. The writ of error brings up for review the action of the court, not only in refusing to direct a verdict for the defendant, but also in directing a verdict for the plaintiff.

C. N. Burch, for plaintiff in error.

K. D. McKellar, for defendant in error.

Before SEVERENS and WARRINGTON, Circuit Judges, and KNAPPEN, District Judge.

KNAPPEN, District Judge (after stating the facts as above). It is contended on plaintiff's behalf that the court rightly directed a verdict for the plaintiff, upon the ground, first, that the baggageman, in so throwing or kicking the ice off the train, was acting, not in the performance of his duties as baggageman, but "merely doing what the master himself had planned and directed him to do," it being shown, as insisted, that it was the custom of the railroad company to have this ice so distributed by putting the same off rapidly moving trains, and that the act in question was thus "in accordance with a fixed purpose and plan"; and, second, because the act of so throwing off the ice was a breach of the employer's duty to provide the employé with a safe place to work.

It is clear that unless this method of putting the ice off the moving train is shown to have been either expressly or impliedly authorized by the railroad company, or permitted by it, with knowledge of the existence of the alleged custom (or unless it shall be held that the act in question constituted a breach of the employer's duty to provide plaintiff a safe place to work), the act of the baggageman was the act of a fellow servant of the plaintiff. There being no Tennessee statute governing the relations in question, it is unnecessary to look to the decisions of the Supreme Court of that state; the question being one of common-law liability of the employer, and thus one of general law. B. & O. R. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Newport News & M. V. Co. v. Howe (C. C. A., 6th Circuit) 52 Fed. 362, 3 C. C. A. 121; Kinnear Mfg. Co. v. Carlisle (C. C. A., 6th Circuit) 152 Fed. 933, 936, 82 C. C. A. 81.

The rule is well settled in the courts of the United States that an employer is not liable for an injury to an employé occasioned by the negligence of another employé engaged in the same general undertaking; that it is not necessary to the application of this rule that an employé should be engaged in the same operation or particular work; that it is enough to bring the case within the general rule of exemption if they are in the employment of the same master and engaged in the same common enterprise, both employed to perform duties tending to accomplish the same general purpose; or, in other words,

if the services of each in his particular sphere or department are directed to the accomplishment of the same general end. Among the cases which declare this rule the following decisions of the Supreme Court and of this court may be cited: B. & O. R. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Oakes v. Mase, 165 U. S. 363, 17 Sup. Ct. 345, 41 L. Ed. 746; No. Pacific R. R. Co. v. Poirier, 167 U. S. 48, 17 Sup. Ct. 741, 42 L. Ed. 72; New England R. R. Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181; Grady v. Southern Ry. Co., 92 Fed. 491, 494, 34 C. C. A. 494; Thomas v. C. N. O. & T. P. R. Co. (C. C.) 97 Fed. 245; Kinnear Manf'g Co. v. Carlisle, 152 Fed. 933, 82 C. C. A. 81.

The cases thus far referred to involve the relation between employés in the same department of labor, including engineer and fireman and conductor and brakeman of the same train, engineer on one train and conductor on another, brakeman on regular train and conductor of wild train, foreman and employé in repair or manufacturing shops, and yardmaster and fireman of switchyard. The authorities are equally express that the relation of fellow servant is not taken away by the fact of their employment in different departments of the same general service. In Quebec S. S. Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397, 33 L. Ed. 656, a ship's carpenter in the deck department was held a fellow servant of the porter in the steward's department. In Northern Pacific R. R. Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009, a common day laborer in the employ of the railroad company, working under the direction of a foreman on a culvert on the line of the railroad was held a fellow servant with the engineer and conductor engaged in operating a passenger train upon the same road; the court saying (page 357 of 154 U. S., page 984 of 14 Sup. Ct. [38 L. Ed. 1009]):

"As a laborer upon the railroad track, either in switching trains or repairing track, is constantly exposed to the danger of passing trains, and bound to look out for them, any negligence in the management of such train is a risk which may or should be contemplated by him in entering upon the service of the company."

In Texas & Pacific Ry. Co. v. Burman, 212 U. S. 536, 29 Sup. Ct. 319, 53 L. Ed. 641, both the engineer of an express train and the section foreman were held fellow servants of a section hand. In Louisville & Nashville R. R. Co. v. Stuber, 108 Fed. 934, 48 C. C. A. 149, 54 L. R. A. 696, this court, speaking through Judge (now Mr. Justice) Lurton, held that a foreman of water supply, whose business was to supervise and repair tanks and pumping machinery at the water stations, is a fellow servant of the engineer of a passenger train with whom he was riding from station to station in the performance of his duties. In Morgan v. Vale of Neath Ry. Co., L. R. 1 Q. B. 149, the reason for the rule which treats those employed in operating the road as fellow employés with those engaged in keeping it in condition is thus tersely stated by Erle, C. J.:

"Whenever the employment is such as necessarily to bring the person accepting it into contact with the traffic of the line of a railway, risk of injury from the carelessness of those managing that traffic is one of the risks necessarily and naturally incident to such an employment, and within the rule."

It will be noted that in the Hambly, Burman, Stuber, and Morgan Cases the injured employé was not engaged in the work of operating trains, but in keeping in order the roadbed or structures used in such operation. They were held, however, to be engaged in the general work of railroad operation, and so within the fellow servant rule. Their relations to the operation of the road are of the same class as those of the plaintiff here. The cases we have cited are sufficient authority for the proposition that the plaintiff and the baggageman in question were fellow servants, as being both engaged in the general work of operation.

The question thus arises whether the record shows without dispute either that the method used by the baggageman of kicking or throwing the ice off the rapidly moving train was in accordance with a fixed purpose and plan adopted by the company, or that there existed a custom on the part of the railroad company to make deliveries of the ice in the manner stated. It may be conceded, at least for the purposes of this opinion, that if the record does show beyond dispute that the defendant company, by the action of any one authorized to represent it in that regard, had adopted such practice, or if the general custom has been proven so long continued as that defendant would be presumed to have known it, or to be negligent in not so knowing it, it would be liable. Plaintiff's counsel has contended, by brief and oral argument, that the adoption of such practice by the defendant is shown by the stipulation of facts. We do not so construe the stipulation. The language goes no farther in this regard than to state that:

"The bag of ice was put upon the train for the purpose of being thrown or kicked off at this place. It was company ice; that is, ice which the railroad company furnished to its section men in warm weather, and was thrown off at this place for the use of its employés."

And that:

"This bag of ice was directed by the depot agent at the town of Wickliffe to be so kicked off of that fast-running train, and when it was placed upon the train by the agent, or by his orders, it was known that the train would not stop at that place, and it was indicated that it should be kicked off from the train when running at this high rate of speed."

Beyond the statement that the ice in question was "ice which the railroad company furnished to its section men in warm weather," there is nothing in the stipulation of facts necessarily connecting the defendant company with the adoption of the method of delivery in question, viz., the kicking or throwing of the ice from the rapidly moving train, unless by the statement that the ice was so delivered with the knowledge, under the direction, and according to the intent of the station agent at Wickliffe. Unless, therefore, it appears that the station agent at Wickliffe had authority to represent the defendant in adopting the method of delivery of the ice in question, and so was clothed with a superior or controlling duty to the plaintiff in that regard, it is clear no action to that effect on the part of the defendant company appears. But the record is entirely silent as to the authority of the station agent, and, to say the least, such controlling or superior authority and duty on his part cannot be presumed. As said by Judge

Taft in Grady v. Southern Railway Company, 92 Fed., at page 494, 34 C. C. A., at page 497:

"The Baugh Case has set such limits to the vice principal doctrine that it is exceedingly difficult to suggest a position, outside of the superintendent or acting superintendent of the various great departments of the road, which will not be filled by fellow servants of all the other employés."

And in Thomas v. Cincinnati, N. O. & T. P. Ry. Co., supra, the same eminent jurist, commenting upon the duties of the yardmaster, which were held not to be of such superior nature as that he represented the railroad company, as between himself and the switchman, used this language:

"The nature of his duties was not at all unlike that of a station agent, only that he had more men under him. He was subject to the orders of the superintendent."

We are not to be understood as holding that the station agent could not, or in fact did not, have authority, express or implied, to represent the company to the extent of directing the method of the delivery of the ice in question, but only that we cannot presume that the powers of the station agent embraced the authority to promulgate, as a superior or superintendent, the order in question.

As to the alleged custom: If the stipulation can be construed as covering any custom to this effect, it falls short of stating a custom so general that it will be presumed to have been known to the defendant. We need not go outside the decisions of this court for authority that such notice is necessary in order to bind the defendant. B. & O. Ry. Co. v. Doty, 133 Fed. 866, 67 C. C. A. 38; Carnegie Steel Co. v. Byers, 149 Fed. 667, 82 C. C. A. 115, 8 L. R. A. (N. S.) 677; Morgan Construction Co. v. Frank, 158 Fed. 964, 86 C. C. A. 168. It is true that these decisions are in cases involving defects in machinery or appliances; but the reason for the rule is no different with respect to the existence of a custom. In Southern Ry. Co. v. Rhodes, 86 Fed. 422, 30 C. C. A. 157, where it was sought to hold a railroad company liable for an injury to a passenger, through being hit by a mail pouch thrown by the post office employés from a moving train, it was held by this court, speaking through Judge Severens, that the duty to notify passengers of such danger and to take such steps as might be necessary to prevent a continuance of the practice did not arise until the railroad company had notice of such practice, either express or implied, from its long continuance. The facts that in the Rhodes Case the negligent act of throwing the pouch was done by a post office employé rather than a railway employé, and that the person hit was a passenger rather than an employé, do not affect the principle involved, as to the requirement of notice.

Do the agreed facts show a breach of duty on the part of the defendant in respect to providing the plaintiff a safe place to work? In our opinion, such breach of duty is not shown. There is no claim that at the place where the injury occurred there was any defect in the railroad track, structures, or appliances. Of itself it was a safe place to work. It was made unsafe only because of the negligent acts of those engaged in the operation of the road; for it is clear that the delivery

of ice to workmen engaged in the work of keeping the road and track in order is a part of the operation of the road. The rule is well settled that, while the railroad company owes a positive and nondelegable duty to its employés with respect to the construction and maintenance in proper repair of its cars, tracks, and other appliances, yet with respect to the operation of the road its duty extends no further than to exercise ordinary care to provide a sufficient number of reasonably competent employés, make proper rules for their government, and to exercise proper supervision over them. When that has been done, it is not liable for an injury to an employé in the operation of the road through the negligence of other employés in the operating department, or their failure to observe the rules, notwithstanding such negligence makes the place unsafe to work in. In Martin v. Atchison, T. & S. F. Ry. Co., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051, the plaintiff, a laborer in the employ of the railroad company, while on a hand car proceeding to his work was run into by a train. It was argued that the defendant violated its duty to see that the plaintiff had a reasonably safe place in which to perform his work, through the negligence of the foreman in failing to warn the plaintiff of the danger, as he had agreed to do. It was held that the doctrine as to the duty of the master to furnish a safe place for the servant to work in had no application. In Pennsylvania Co. v. Fishack, 123 Fed. 465, 59 C. C. A. 269, the negligence of a switch yardmaster, in directing a train to take a certain track, with information that it was open when it was not, caused a collision. It was held that the act of the switch yardmaster was not a breach of the duty to provide a safe place to work, but that the act complained of was one of operation. In that case Judge Cochran, who wrote the opinion of this court, reviewed a large number of cases sustaining the undoubted rule above stated. The following cases, in addition to those cited in Penn. Co. v. Fishack, support the rule there stated: American Bridge Co. v. Seeds (C. C. A., 8th Circuit), 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041; Kinnear Mfg. Co. v. Carlisle, supra; Portland Gold Min. Co. v. Duke (C. C. A., 8th Circuit), 164 Fed. 180, 182, 90 C. C. A. 166. See, also, Neagle v. Syracuse, etc., Ry. Co., 185 N. Y. 270, 77 N. E. 1064.

None of the cases cited on plaintiff's behalf, in our judgment, conflict with the rule we have stated. Thus, in Choctaw, Okla. & Gulf Ry. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96, the negligence, which was held to be that of the railroad company, consisted in so maintaining a water tank spout as to collide with a brakeman at his post of duty upon a freight train. This was clearly a breach of a nondelegable duty to provide the employé with a safe place to work. Such construction was no part of the operation of the railroad. In Kentucky Block Cannel Coal Co. v. Nance, 165 Fed. 44, 91 C. C. A. 82, decided by this court, the plaintiff, while doing mining work, was injured by the fall of a drain pipe in course of removal from a worked-out portion of the mine, through the negligence of those engaged in the removal of the pipe. It was held that the plaintiff and the workmen whose negligence caused the fall of the pipe and resulting injury were not fellow servants, for the reason that plaintiff was en-

gaged in the work of operating the mine, while the negligent servants were engaged in the dismantling of a place provided for the work of operation, and so represented the master in a duty to the servant equally nondelegable as the work of original construction. In Northwestern Fuel Co. v. Danielson (C. C. A., 8th Circuit), 57 Fed. 915, 6 C. C. A. 636, plaintiff was employed by defendant to shovel and remove coal from a burning dock. While plaintiff was so at work under two bents which formed a part of the trestlework upon the dock, he was injured by the falling of the bents, occasioned by the negligence of two foremen engaged in the work of tearing down the trestle, and that of the superintendent under whose direction the foremen were so engaged, in failing to notify the plaintiff that the trestle was being taken down. It was held (so far as material to this case), not only that the superintendent was the representative of the master, but that the foremen engaged in the work of demolition were not the fellow servants of the plaintiff, because they represented the defendant in the nondelegable duty of keeping the place in which plaintiff was at work reasonably safe. In McCabe & Steen Const. Co. v. Wilson, 209 U. S. 275, 280, 28 Sup. Ct. 558, 52 L. Ed. 788, it was held that the superintendent of construction and foremen of the bridge gang engaged in supervising and directing the work on a bridge represented the principal with respect to the duty to provide a safe and suitable place and structures for its employés to work in, and so were not fellow servants as to a fireman engaged in the movement of a train over the bridge, viz., engaged in the operation of the road as expressly distinguished from the work of construction. In Santa Fé & Pacific R. R. Co. v. Holmes, 202 U. S. 438, 26 Sup. Ct. 676, 50 L. Ed. 1094, it was held that a train dispatcher represented the company in the promulgation of orders for the operation of the train, and was thus not a fellow servant of the trainmen. The decision in the Holmes Case is in accordance with the decided weight of authority previous thereto. This court has more than once asserted the same proposition (B. & O. Ry. Co. v. Camp, 65 Fed. 952, 13 C. C. A. 233; Felton v. Harbeson, 104 Fed. 737, 44 C. C. A. 188), and this proposition was recognized in Pennsylvania Co. v. Fishack, supra. We see nothing in the cases of Fletcher v. Baltimore & Potomac R. R. Co., 168 U. S. 135, 18 Sup. Ct. 35, 42 L. Ed. 411, and Peters v. George, 154 Fed. 634, 83 C. C. A. 408, opposed to the views we have expressed.

The conclusion reached is that the agreed facts did not justify a direction of verdict for the plaintiff. But while, under the facts on which the case was submitted, it would have been proper to direct a verdict for the defendant, yet such facts are not inconsistent with the existence of other facts, not embraced in the stipulation, upon which a liability might be established; and, as the agreement was made upon the trial, it must be held made for the purposes of, and limited to, that trial, and so cannot, under the practice which contemplates the production of proofs in open court, be held to preclude further or different proofs upon another trial.

The judgment must accordingly be reversed, and a new trial ordered.