HARTMAN v. TOYO KISEN KAISHA S. S. CO.

(District Court, N. D. California, S. D.   August 6, 1917.)

No. 15877.

1. SEAMEN ⬳29(2)—PERSONAL INJURIES—LIABILITY.

Where passengers and members of the crews of a steamship company were transported between the wharf and the steamships at a particular port in launches, the duty rested upon the party responsible for the management of a launch in which a member of the crew was returning to his ship to so handle it as to afford him reasonable opportunity to land safely upon the gangway of the vessel.

2. SEAMEN ⬳29(2)—PERSONAL INJURIES—LIABILITY.

Where a member of the crew of a vessel was permitted to go ashore while the vessel was in port for a proper purpose, and in due course returned to the ship, and was injured by the negligent management of the launch in which he was taken to the ship, it was immaterial, so far as liability for his injury was concerned, whether he went ashore for his own personal ends or on an errand for the ship.

3. SEAMEN ⬳29(4)—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.

Where a steamship company arranged with a steamship agency to transport passengers and crews of its vessels between the wharf and the vessel, and a member of the crew returning to the vessel found the large launch usually employed absent on other work, he was within his rights in taking passage on a small launch in charge of employés of the same agency, and which in other instances had been so used when the larger launch was not available.

4. MASTER AND SERVANT ⬳361—WORKMEN'S COMPENSATION ACT—EMPLOYMENTS WITHIN STATUTE—SEAMEN.

Under Judicial Code, § 256 (Act March 3, 1911, c. 231, 36 Stat. 1160 [Comp. St. 1916, § 1233]), giving the courts of the United States exclusive jurisdiction of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the common law is competent to give it, and section 24 (Comp. St. 1916, § 991), giving District Courts original jurisdiction of such causes, a state Workmen's Compensation Act did not apply to an injury sustained by a member of the crew of a vessel in a foreign port, though he was not an ordinary seaman, but employed on the vessel as a barber, especially where the state Supreme Court holds that the statute does not cover injuries sustained outside the territorial limits of the state.

5. MASTER AND SERVANT ⬬114—PLACE OF WORK—MEANS OF ACCESS TO PLACE OF EMPLOYMENT.

It is the duty of an employer to furnish his employé a reasonably safe place for the performance of his labor, including reasonably safe means of access to his place of employment, so far at least as the circumstances require such means to be furnished by the employer.

6. MASTER AND SERVANT ⬬103(1)—PLACE OF WORK—DELEGATION OF DUTY.

The duty of furnishing a reasonably safe place to work, including reasonably safe means of access to the place of employment, may not be delegated by the employer to another so as to relieve him from the consequence of any default in the manner in which it is performed.

7. MASTER AND SERVANT ⬬114—PLACE OF WORK—MEANS OF ACCESS TO PLACE OF EMPLOYMENT.

In legal contemplation an employé is as much within the discharge of his duty to his employer while proceeding to his place of service through the means provided by the master as when actually engaged in his work, though he performs no service en route, and though the cause of absence from his work be for his own purposes.

8. SEAMEN ⬬29(2)—PERSONAL INJURIES—LIABILITY.

Where a steamship company engaged a steamship agency to transport passengers and crews of its vessels to and from the shore in launches, it was liable for the negligent management of such a launch causing injury to a member of the crew, even though the steamship agency was an independent contractor, since in the discharge of the particular service of conveying the injured employé to the ship it stood merely in the shoes of the employer, and performed a duty cast upon the employer by law.

9. DAMAGES ⬬131(2)—INJURIES TO LEG—AMOUNT OF DAMAGES.

A barber employed on a ship sustained an injury in a foreign port, both the tibia and fibula being fractured in an unusual manner so that pieces of bone had to be cut away to make them unite. The fracture was imperfectly reduced, and he was brought home in charge of the ship's doctor without any resetting of the limb, resulting in a partial knitting, so that upon his arrival in San Francisco the bones had to be rebroken. He was in the hospital in San Francisco for 10 days, and in care of a nurse at his home for three or four months, after which he was required to go on crutches, or with a cane, unfitting him to resume his calling as barber for some considerable time, though he had been able to do other work. *Held*, that an allowance of $700 in addition to an allowance of a similar amount for medical treatment, nurse hire, appliances, and drugs would be proper.

At Law. Action by A. L. Hartman against the Toyo Kisen Kaisha Steamship Company. Judgment for plaintiff.

Edgar D. Peixotto, of San Francisco, Cal., for plaintiff.
Samuel Knight, of San Francisco, Cal., for defendant.

VAN FLEET, District Judge. This is an action to recover for personal injuries alleged to have been suffered by plaintiff while in defendant's employment, through the negligence of those for whom it is claimed defendant is responsible. A jury was waived, and the action tried to the court.

---

⬬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Plaintiff at the time of the injury was employed as a barber on the Shinyo Maru, one of defendant's liners plying between Japanese and American ports, the vessel being on the particular occasion in the port of Nagasaki. At that port, where conditions are such that steamers do not lay at the bund or wharf, but out in midstream, defendant had a contract with Holme, Ringer & Co., a steamship agency, part of whose business was the operation of launches for the transportation of passengers and crews of vessels to and from the shore, to perform such service on their behalf, and this was the exclusive means afforded for the purpose.

On the day of the accident, plaintiff had been ashore on leave, for purposes of his own, and in due time was returning to the vessel; when he reached the bund he found that a large launch usually employed in the transportation was absent on other work, and he was taken out to the steamer on a smaller one in charge of employés of the same agency. In attempting to board the ship, the sea being somewhat choppy, he was thrown down and injured, having his leg broken.

[1-3] At the conclusion of the oral argument, in giving counsel leave to file briefs, the court stated that there were but two questions of law giving rise to any doubt in its mind as to the way the judgment should go: First, whether, as claimed by defendant, the demand was one falling within the Workmen's Compensation Act of the state as affording the exclusive remedy; and, second, whether, under the circumstances disclosed, the defendant was responsible for the negligence of the employés of Holme, Ringer & Co., through whose instrumentality the injury occurred. And as to the evidence the court at the same time stated:

"I can state in a very few words my views as to what the evidence shows: I think that the court must find, under the facts, that there was a negligent handling of this boat, this launch, at the time of the injury; that is, that the plaintiff's injury was caused by negligence. I do not think the circumstances are such as to show contributory negligence in plaintiff, as claimed; it does not appear that he was not justified in endeavoring to board the steamer in the manner he did and which resulted in his injury; in other words, the situation was not such as to advertise to an ordinarily reasonable man that there was any extra hazard in his attempt to board the steamer at the time. I think that the duty rested upon whoever was responsible for the management of the launch to so handle it as to afford reasonable opportunity to the plaintiff to safely land upon the gangway of the vessel. I think, moreover, that under the evidence the plaintiff was quite within his rights and within the protection of his contract of employment, in going ashore and returning to the vessel on the occasion in question. Whether he went for his own personal ends, as seems to be conceded, or on an errand for the ship, makes no difference under the circumstances. It is a matter of common knowledge that it is customary on all vessels coming into port, unless under exceptional circumstances, that those employed aboard are, on proper occasions, permitted to go ashore; and that privilege does not ordinarily take them out of the terms of their employment. Of course, if they go without leave or engage while absent in something which is wholly apart from anything connected with their service, and receive injury, that is a different thing; but if an employé of a ship is permitted to go ashore, as this plaintiff was, under proper conditions, and for a proper purpose, and in due course returns to the ship, and is injured, under circumstances and in a manner such as here shown, I think it entirely

too narrow a view to say that he is acting merely on his own personal responsibility and without the protecting terms of his contract.

"Furthermore, the evidence satisfies me that the plaintiff, in returning to the steamer, was entirely within his rights in taking passage on board this small launch, as to which some question is made. The evidence shows without any serious conflict that this was not the only instance in which the small launch was used for a like purpose, but that it was so used in many other instances when the larger launch was not available. The agent was under contract with the defendant to furnish means of communication back and forth between the pier and steamer, the situation being such in that harbor, as stated, that there could be no approach of liners of this draught to the wharf, but where they had to seek an anchorage and maintain communication with the shore by means of launches, the contract called upon Holme, Ringer & Co. to furnish that medium of communication, and I have no doubt that under the law the use of that small launch for such purpose should be held to have been entirely within the terms of the contract between the parties. The defendant held out to its employés aboard the ship that they were to use the means of transportation thus afforded; and if the circumstances are such under the law as to make the employés of Holme, Ringer & Co. the employés pro hac vice of the defendant, then, of course, the defendant would be responsible for the negligence of those in charge of the launch. I am satisfied that, had due precautions been taken in the handling of the launch, plaintiff, like the other two men who were aboard, could have landed safely, and this want of care seems to me to have arisen either in one of the men managing the launch not handling his boat hook as he should, or a failure to have some one on the gangway of the steamer with a hook or other proper means to aid in holding the small craft in a safe position while the landing was being effected. That being the means furnished by the defendant for the purpose for which it was being used, a due regard for the safety of its employés would have dictated the necessity, especially in view of the somewhat rough character of the water, of having a man on the gangway with some appropriate means to aid in holding the launch while those on board were being taken off.

"Accordingly my judgment is, as before suggested, that the circumstances here are such as to warrant the court in finding that there was negligence on the part of those handling the small boat which proximately caused the injury, and the question I wish to examine more definitely in this connection is as to where responsibility for such negligence rests. If the defendant is to be held responsible for the management of the launch, as I am inclined to think it is, then, of course, the plaintiff has a right of recovery. What that recovery should be, since I am not ready to decide the case definitely, by reason of the legal questions suggested, I will determine should I reach the conclusion that the defendant is legally responsible."

The views thus expressed upon the evidence have not been modified by my further consideration of the case, nor do I deem it necessary to add to them.

As concerns the questions of law reserved.

[4] 1. The contention that plaintiff's claim is within the Workmen's Compensation Act of the state (St. 1913, p. 279), and that jurisdiction accordingly rests exclusively with the Industrial Accident Commission, has been settled adversely to defendant, since this case was submitted, in the very recent case of Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086. In that case it was sought to uphold an award under the Workmen's Compensation Act of New York (Consol. Laws, c. 67) for an injury received in a maritime transaction, as against the objection that that act had no application, that the jurisdiction in such cases was exclusively in the federal courts, and it was held that under the provisions of section 9 of the Judiciary Act of

1789 (Act Sept. 4, 1789, c. 20, 1 Stat. 76 [Comp. St. 1916, § 1583], re-enacted in Judicial Code, §§ 24, 256):

"Exclusive jurisdiction of all civil cases of admiralty and maritime jurisdiction is vested in the federal District Courts, 'saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it.' The remedy which the compensation statute attempts to give is of a character wholly unknown to the common law, incapable of enforcement by the ordinary processes of any court, and is not saved to suitors from the grant of exclusive jurisdiction. The Hine, 4 Wall. 571, 572, 18 L. Ed. 451; The Belfast, 7 Wall. 624, 644, 19 L. Ed. 266; Steamboat Co. v. Chace, 16 Wall. 522, 531, 533, 21 L. Ed. 369; The Glide, 167 U. S. 606, 623, 17 Sup. Ct. 930, 42 L. Ed. 296. And finally, this remedy is not consistent with the policy of Congress to encourage investments in ships, manifested in the Acts of 1851 and 1884 (R. S. 4283–4285; section 18, Act June 26, 1884, 23 Stat. 57, c. 121), which declare a limitation upon the liability of their owners. Richardson v. Harmon, 222 U. S. 96, 104 [32 Sup. Ct. 27, 56 L. Ed. 110]."

The present case is concededly of maritime origin, but it is suggested that the fact that plaintiff's duties were other than those of the ordinary seafaring man has the effect to take it without the principles of the Jensen Case. But that case is not bounded by any such narrow lines.

Moreover, in North Alaska Salmon Co. v. Pillsbury, 162 Pac. 93, likewise decided since the submission of the present case, it is held by the Supreme Court of California that the Workmen's Compensation Act of the state, in force at the time plaintiff's injuries were received, did not cover claims arising upon injuries inflicted outside the territorial limits of the state; that in such instances the Industrial Accident Commission had no jurisdiction to award compensation.

2. The second question arises on defendant's contention that, conceding the plaintiff's injuries to have been the result of negligence, it was the negligence of Holme, Ringer & Co., who, it is claimed, was, under their contract with defendant, an independent contractor for the service it undertook, and that defendant cannot therefore be held liable for such negligence; that plaintiff's right of recovery, if any, is against Holme, Ringer & Co. But the fallacy of this contention can, I think, be readily shown by a consideration of one or two principles governing the relation of master and servant, which the contention seems to wholly ignore.

[5-7] The first and most fundamental is that of the duty of an employer to furnish his employé with a reasonably safe place for the performance of his labor, which includes reasonably safe means of access to his place of employment, so far, at least, as the circumstances require such means to be furnished by the employer; and this duty may not be delegated by the employer to another so as to relieve him from the consequence of any default in the manner in which it is performed. This principle is so imbedded in the law of master and servant as to be universally recognized as controlling in every instance where it is not modified by special circumstances or by some specific feature of the contract. And that, as suggested by the court in its discussion of the evidence, the plaintiff was, under the circumstances shown, within the protection of his contract of employment at the time of meeting with his injury, is likewise not to be questioned. An employé in legal contemplation is as much within the discharge of his

duty to his employer while proceeding to his place of service, through the means provided by the master, as when actually engaged in his work, and this although he perform no service en route, and though the cause of absence from his work be for his own purposes. Rideout v. Pillsbury, 173 Cal. 132, 159 Pac. 435; Moore v. Pacific Coast Steel Co., 171 Cal. 489, 153 Pac. 912; Koskela v. Albion L. Co., 25 Cal. App. 12, 142 Pac. 851. And see Ocean Accident Co. v. Industrial Accident Commission, 173 Cal. 313, 159 Pac. 1041, relied on by defendant, where, at page 1044, L. R. A. 1917B, 336, the same doctrine is recognized.

[8] Applying these principles, it will at once be perceived that it can make no difference to the question of defendant's liability if it be assumed that, as between it and its agent, Holme, Ringer & Co., the latter was, under their contract, to be regarded as an independent contractor, since, in any event, in discharge of the particular service of conveying plaintiff to the ship, it stood merely in the shoes of the defendant and performed a duty cast upon the latter by the law. James Griffith & Sons Co. v. Brooks, 197 Fed. 723, 117 C. C. A. 117; American Shipbuilding Co. v. Lorenski, 204 Fed. 44, 122 C. C. A. 353; Bohnhoff v. Fischer, 210 N. Y. 172, 104 N. E. 130; Raxworthy v. Heisen, 191 Ill. App. 457; Luce v. Holloway, 156 Cal. 162, 103 Pac. 886; Shearman & Redfield on the Law of Negligence, § 176.

As stated in Shearman & Redfield, § 176:

The rule is well established that one cannot "escape from the burden of an obligation imposed upon him by law by engaging for its performance by a contractor. Whatever he is bound to do must be done; and though he may have a remedy against his contractor for the failure of the latter to discharge his duty, strangers to the contract are still at liberty to enforce the rights conferred upon them by law without noticing the contract."

And in Griffith & Sons Co. v. Brooks, supra, where the injury resulted from the use of a derrick employed by an independent contractor, it is said:

"In applying the doctrine of liability arising out of the breach of a master's positive personal duty, it is to be observed that there is a tendency at times to confuse it with other doctrines equally well established, as, for instance, with the fellow servant rule; but the line of distinction in this behalf is pointed out in decisions of this court. Deye v. Lodge & Shipley Mach. Tool Co., 137 Fed. 480, 482, 70 C. C. A. 64; Kentucky Block Cannel Coal Co. v. Nance, 165 Fed. 44, 47, 91 C. C. A. 82; Illinois Cent. R. Co. v. Hart, 176 Fed. 251, 252, 100 C. C. A. 49 [52 L. R. A. (N. S.) 1117]. * * * The derrick now in question was a quasi permanent appliance, requiring care in its installation commensurate with the character of the work to which it was to be applied. If the company had itself rented the derrick and installed and operated it in the same place and work in which Bishop located and used it, the company's duty to plaintiffs to install the derrick with reasonable care would scarcely have been questioned; and it is to misapply the principles of independent contract to insist that this duty ceased simply because the company chose for its own benefit to employ Bishop to do the same thing, and, regardless of the safety of its own servants, suffered him to install the derrick negligently. The reason for the master's care remaining, its duty also remained."

And so in Raxworthy v. Heisen, supra, it is said:

"It is a well-recognized principle that the duty of a master to furnish his employé a safe place to work cannot be delegated to an independent con-

tractor, so as to relieve him from liability. 16 Am. & Eng. Encyc. of Law, 197: Bailey on Personal Injuries, vol. 1, § 44; Bernheimer Bros. v. Bager, 108 Md. 551, 561 [70 Atl. 91] 129 Am. St. Rep. 458."

There are some further considerations, suggested rather than urged, bearing upon the relations of the parties, but I do not regard them as materially affecting the plaintiff's right to recover, and they do not call for special notice.

[9] 3. This leaves only the question of the amount of compensation to which plaintiff should be justly entitled for the injury and the suffering and incidental detriment accruing therefrom. The injury was rather a severe one, the break being below the knee, and both tibia and fibula being fractured in rather an unusual manner, so that pieces of bone had to be cut away to make them unite. Plaintiff was taken for first treatment to a hospital in Nagasaki, where an X-ray was taken and the fracture imperfectly reduced, the bones not being brought in apposition. He was then taken aboard the steamer and brought home in charge of the ship's doctor, no resetting of the limb being had on the voyage. While the evidence in this regard does not establish malpractice in his early treatment, the result was such that on arrival in San Francisco, a partial knitting having taken place, he had to be taken to a hospital and the bones rebroken to secure more perfect union, this resulting in a delayed recovery. Plaintiff was in the hospital for some ten days, and thereafter in care of a nurse at his home for some three or four months, after which he was required to go on crutches or with a cane, unfitting him for some considerable time from resuming his calling as barber because of his inability to stand on his feet without pain, although he has been able for some time to run a car for hire. Defendant did not assume or pay any of the attendant expenses resulting from plaintiff's injury, as medical treatment, nurse hire, appliances or drugs, but the same have been borne by the plaintiff. These expenses, from the items in evidence, making reasonable allowance for some indefiniteness, will, I think, be covered by the sum of $700; and, in addition to this, compensation for plaintiff's suffering and loss of time, during which he was incapacitated, at least to a partial extent, for earning a living, may, I think, very reasonably be fixed at a like sum.

Judgment may accordingly be entered for the plaintiff in the sum of $1,400 and his costs.